United States District Court
Southern District of Texas

**ENTERED**

May 09, 2018

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ADRIAN ERNESTO ROSALES, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:16-CV-02736 |
| | § | |
| CHAPARRAL PLUMBING, L.P. | § | |
| *Defendant*. | § | |

**MEMORANDUM AND RECOMMENDATION ON DEFENDANT'S MOTION TO
DISMISS FOR FAILURE TO PROSECUTE AND MOTION FOR SUMMARY
JUDGMENT**

This case was referred by District Judge Vanessa Gilmore pursuant to 28 U.S.C. §

636(b)(1)(B) for report and recommendation on all dispositive pretrial matters.  (Dkt. 20).

Pending before the court is Defendant Chaparral Plumbing's Motion to Dismiss the claims of

Plaintiff Adrian Rosales for failure to prosecute and, in the alternative, Motion for Summary

Judgment.  (Dkt. 18).  Plaintiff has not filed any response to either motion.  Rulings by a

magistrate judge on dispositive matters, such as a motion to dismiss or motion for summary

judgment, are recommendations subject to *de novo* review by the district court when properly

challenged by the losing party.  *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 762 (5th Cir.

2016) (citing 28 U.S.C. § 636(b)(1)).  After considering the pleadings, the record, and the

applicable law, it is **RECOMMENDED** that the Defendant's motion to dismiss be **DENIED,**

and that its motion for summary judgment be **GRANTED**.

### I.      Background

**1.  Procedural History and Factual Background**

Plaintiff Adrian Rosales (Plaintiff/Rosales), now proceeding *pro se*, complains that while

employed with Defendant Chaparral Plumbing, L.P. (Defendant/Chaparral), he was subjected to

unlawful discrimination on the basis of his race and national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. §§ 2000e *et seq*.  Rosales alleges that Defendant violated Title VII by permitting its employees to harass him with "unwelcome verbal assaults and bigot[ed]" statements during the time he worked for Defendant.  (Dkt. 1 at ¶ 31).  He claims the behavior constituted "intentional[] discrimination" that created a hostile work environment "affect[ing] the terms, conditions, and privileges of [his] employment at Chaparral." (*Id*. at ¶¶ 28-29, 33).

### 1.a. Procedural History

On August 17, 2015, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) alleging that he had been subjected to discrimination on the basis of his race and national origin, which he identified as Hispanic and Middle Eastern.  (Dkt. 18-4 at 5; Dkt. 1 at 2).  On June 15, 2016, the EEOC issued a right-to-sue letter on his stated claims.  (Dkt. 18-4 at 3; Dkt. 1-1).  On September 9, 2016, Rosales filed this action against Chaparral.  (Dkt. 1).

On October 26, 2016, Defendant filed its original answer and on February 8, 2017, it filed an amended answer.  (Dkt. 7; Dkt. 12).  On December 1, 2017, Plaintiff's attorney filed an agreed motion to withdraw as counsel of record.  (Dkt. 15).  On the same date, Plaintiff filed an agreed motion for continuance, requesting that the court extend the scheduling order deadlines by ninety days to allow the parties to conduct depositions, to give Plaintiff time to obtain new counsel, and to provide Defendant an opportunity to file any dispositive motions.  (Dkt. 14). Those motions were granted on December 4, 2017.  (Dkts. 16, 17).

On January 11, 2018, Defendant's attorney sent a letter to Plaintiff's last known address inquiring as to his availability for deposition.  (Dkt. 18 at 12; Dkt. 18-5, 13-14). The letter was

delivered on January 12, 2018; however, Rosales did not respond to Chaparral's inquiry, so his deposition was scheduled for February 8, 2018 at 10:00 a.m.  (Dkt. 18-5 at 15, 17).  A notice of deposition, which included the date and location of the deposition, was delivered to Plaintiff's last known address on January 25, 2018.  (Dkt. 18 at 12; Dkt. 18-5 at 19).  Rosales did not appear at the deposition and Defendant claims that it has yet to receive any communication from Rosales.  (Dkt. 18 at 12; Dkt. 18-5 at 2-8).

On March 1, 2018, Defendant filed this Motion to Dismiss for failure to prosecute, or, in the alternative, Motion for Summary Judgment.[1]  (Dkt. 18).  In the motion, Defendant contends, first, that Plaintiff's lawsuit should be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 41(b) because Plaintiff "has not been diligent in prosecuting his case, and no lesser sanctions would prompt diligent prosecution."  (*Id*. at 13-14).  In support of that argument, Chaparral claims that Plaintiff failed to respond to its request for deposition and later failed to appear at his noticed deposition.  (*Id*. at 14).  Defendant further argues that Rosales "has ignored all communication attempts and has given no indication that he plans to . . . prosecute his case."  (*Id*.).  Chaparral insists that it has been "indisputably prejudiced" by Plaintiff's lack of cooperation and failure to appear for deposition, and as a result, cannot adequately defend itself against his claims.  (*Id*.).  In the alternative, Defendant argues that Plaintiff's lawsuit should be dismissed, pursuant to Rule 56, because he has failed to present any evidence to establish the elements of a hostile work environment claim under Title VII.  (*Id*. at 16-19).  Plaintiff has not responded to either motion.  In addition, on March 28, 2018, Defendant filed an advisory alerting the court that Plaintiff failed to respond to its motion in violation of Local Rule 7.3 and requesting that its motion be granted pursuant to Local Rule 7.4.  (Dkt. 21).

---

[1]Defendant's certificate of service states that the motion was send to the Plaintiff by overnight or hand delivery.  (Dkt. 18 at 21).

**1.b. Factual Background**

Plaintiff was hired by Chaparral as a "Plumber Apprentice" in 2000. (Dkt. 1 at ¶ 8; Dkt. 18-4 at 6). Rosales worked for Chaparral until approximately 2008 when he left the company to pursue other work opportunities. (Dkt. 1 at ¶ 8; Dkt. 18 at 7). According to Defendant, in 2009, Plaintiff suffered two gunshot wounds to the head from a .22 caliber gun. (Dkt. 18 at 7; Dkt. 18-2 at 9). As a result of that incident, he suffered from left eye blindness and post-traumatic stress disorder (PTSD). (Dkt. 18-2 at 9). A few years after the shooting, in March 2013, Plaintiff returned to work at Chaparral. (Dkt. 18 at 7, Dkt. 18-4 at 5).

Plaintiff states in his complaint that he was born and raised in Chicago, is of Hispanic and Middle Eastern descent, and has a brown skin tone. (Dkt. 1 ¶ 7). In October 2014, while employed at Chaparral, he began growing a beard, which eventually grew to the length of 12-inches. (Dkt. 1 at ¶ 11). Plaintiff alleges that, shortly thereafter, he was subjected to "offensive name calling" by several Chaparral supervisors (collectively, Supervisors), including Justin Floyd (Floyd). (Dkt. 1 at ¶ 14; Dkt. 18-4 at 5). He claims that the Supervisors frequently called him "'Taliban,' 'Mountain Man,' 'Al-Qaeda,' 'Osama Bin Laden,' 'Paki-monkey,' 'bitch,' 'little Paki,' and 'Iranian puppet.'" (Dkt. 1 at ¶ 13; Dkt. 18-4 at 5). Plaintiff alleges that other employees began to "chime in with . . . racist remarks" and that the Supervisors did nothing to stop the conduct, despite his repeated complaints. (Dkt. 1 at ¶¶ 15-17). Rosales claims that some Chaparral employees considered the behavior "unacceptable," but did not speak out against the Supervisors because they feared retaliation. (Dkt. 1 at ¶ 19).

Plaintiff complains that he suffered emotional distress, frequent migraines, and discord in his personal life as a result of the verbal slurs directed toward him. (Dkt. 1 at ¶ 22). He contends that the "onslaught of slurs" was so severe that he had difficulty going to work. (Dkt. 1 at ¶ 23).

He also claims that he sought psychiatric treatment to cope with the "emotional distress, negative mood, mental anguish, headaches, and [marital troubles]" that were caused by Defendant's behavior. (Dkt. 1 at ¶ 22). Roslaes alleges that he was forced to resign from his position due to the hostile work environment at Chaparral, and that he has not been able to find regular full-time employment since he resigned from the company. (Dkt. 1 at ¶ 23).

In support of its motion for summary judgment, Defendant presented evidence in the form of an affidavit, stating that Rosales and another Chaparral employee, Daniel Ayala (Ayala), wagered $100 to see who could grow the longest beard by the end of 2014. (Dkt. 18 at 8-9; Dkt. 18-3 at 2). The affidavit states that, as their beards grew, other Chaparral employees began to call them names and joke about their appearance. (Dkt. 18 at 9; Dkt. 18-3 at 2). Defendant argues that neither of the men objected to the joking or reported the comments as abusive. (Dkt. 18 at 9; Dkt. 18-3 at 2).

Additional summary judgment evidence establishes that, after Plaintiff returned to Chaparral in 2013, he was frequently absent from or late to work. Specifically, Chaparral presented text messages showing that Rosales and his wife repeatedly informed Chaparral that Rosales would be absent from or late to work for various reasons, including vision problems, headaches, stomach trouble, emergency room visits, and medical appointments. (Dkt. 18-1 at 4, 6-7, 9-13, 20-28, 30-39, 41). Chaparral accommodated these absences, permitted Rosales to return to work, and provided him with assignments. (Dkt. 18 at 8, 9).

From February 13, 2015 to February 18, 2015, Plaintiff again was absent from work, but failed to communicate with Chaparral regarding his absence. (Dkt. 18 at 10). On February 18, 2015, Plaintiff sent a text message to his supervisor, Justin Floyd, stating that he had been sick with the flu and asking if he "[was] allowed to come back to work[.]" (Dkt. 18 at 10; Dkt. 18-1

at 34, 35).  Floyd told Rosales that he needed to "be accountable" in order to continue working at the company, and that "[i]f that [was] an issue then . . . [he should] find a new job[.]"  (Dkt. 18-1 at 35).  Floyd explained that it was Plaintiff's lack of communication regarding his medical absences that was problematic, not the absences themselves.  (*Id*. at 36).

Shortly thereafter, on February 25, 2015, Rosales submitted his two-week notice and resignation.  (Dkt. 18 at 11).  However, on the following day, February 26, 2015, Rosales informed Floyd by text that he "would not be finishing [his] two weeks[,]" and that he was "done[.]"  (Dkt. 18 at 11; Dkt. 18-1 at 37).  Floyd acknowledged receipt of Rosales' immediate resignation and wished him good luck.  (Dkt. 18 at 11; Dkt. 18-1 at 38).

## II.   Analysis

### 1.  *Pro Se* Representation

As a preliminary matter, the court notes that Plaintiff is not represented by counsel and has no legal training.  When a plaintiff is proceeding *pro se*, the court must afford his pleadings a liberal construction.  *Propes v. Quarterman*, 573 F.3d 225, 228, 231 (5th Cir. 2009) (citing *Johnson v. Quarterman*, 479 F.3d 358, 359 (5th Cir. 2007)).  However, it is well settled that "the notice afforded by the Rules of Civil Procedure and the local rules is . . . sufficient" to advise a *pro se* litigant of his burden in opposing a summary judgment motion.  *White v. Briones*, No. H-09-2743, 2011 WL 66134, at *3 (S.D. Tex. Jan. 7, 2011) (citations omitted).  Therefore, despite his *pro se* status, Rosales is expected to comply with "the rules of procedure and make arguments capable of withstanding summary judgment."  *Mutaba v. Haliburton*, 949 F.Supp.2d 677, 681 (S.D. Tex. 2013) (citations omitted); *see Aguirre v. Tristar Risk Management*, No. C-10-394, 2011 WL 843896, * at 2 (S.D. Tex. March 4, 2011).

### 2.   Dismissal Pursuant to Local Rules

Pursuant to the Local Rules of the United States District Court for the Southern District of Texas, failure to respond to a motion is taken as a representation of no opposition. S.D. TEX. R. 7.3, 7.4.   However, when a plaintiff fails to respond to a dispositive motion, the court nevertheless considers the merits of the motion before it.   *Petteway v. Bank of America, N.A.*, No. H-11-4215, 2012 WL 13055887, at *1 (S.D. Tex. Jan. 9, 2012) (citing *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1022-23 (5th Cir. 1995) (even in the absence of a response, movant must establish the absence of a genuine issue of material fact before it can prevail on a summary judgment motion).   Although Plaintiff failed to respond to Defendant's motion for summary judgment and motion to dismiss for failure to prosecute, the court will consider the merits of each motion.

### 3.   Failure to Prosecute under Rule 41(b)

#### 3.a. Legal Standard

A district court possesses the authority to dismiss an action if the plaintiff fails to prosecute or comply with a court order. FED. R. CIV. P. 41(b).   The authority to dismiss a case under Rule 41(b) flows from a court's inherent power to control its docket, prevent undue delays in the disposition of pending cases, and avoid congested court calendars.   *Mutaba*, 949 F.Supp.2d at 687 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962)).   Unless otherwise stated, an involuntary dismissal under Rule 41(b) operates as adjudication on the merits.   FED. R. CIV. P. 41(b).   Even if the dismissal under Rule 41(b) is made without prejudice, it operates as a dismissal with prejudice if time to refile the case has expired (as it has here). *See Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992)("Where further litigation will

be time-barred, a dismissal without prejudice is no less severe a sanction than a dismissal with prejudice[.]")

Rule 41 dismissals with prejudice are appropriate only when "(1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or  the record shows that the district court employed lesser sanctions that proved to be futile." *Woods v. Soc. Sec. Admin*, 313 Fed. Appx. 720, 721 (5th Cir. 2009) (per curiam).  In addition, the Fifth Circuit usually finds the presence of at least one of three "aggravating factors" when it affirms a dismissal with prejudice: (1) the delay was caused by the plaintiff, rather than his attorney; (2) the delay caused actual prejudice to the defendant; and (3) the delay is the result of intentional conduct.  *In re Wood*, 199 Fed. Appx. 328, 332 (5th Cir. Aug. 23, 2006).

**3.b.   Defendant has not shown the "clear record of delay or contumacious conduct" by Plaintiff required to justify a dismissal under Rule 41.**

A clear record of delay requires "significant periods of total inactivity[,]" rather than a delay lasting only a few months.  *Berry*, 975 F.2d at 1191-92; *In re Wood*, 199 Fed. Appx. at 333.  "Contumacious conduct . . . goes beyond mere negligence and evinces 'stubborn resistance to authority.'" *Webb v. Morella*, 457 Fed.Appx.448, 453 (5th Cir. 2012) (quoting *Milan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 327 (5th Cir. 2008)); *NovaLash, Inc. v. Reed*, 504 B.R. 831, 835-36 (S.D. Tex. 2014).  Typically, "bad faith" or "persistent disobedience to court orders" is required for a finding of contumacious conduct.  *John v. State of La.*, 828 F.2d 1129, 1132 (5th Cir. 1987).  Overall, dismissal with prejudice calls for "egregious and sometimes outrageous delays[,]" in which "the plaintiff's conduct has threatened the integrity of the judicial process . . . leaving the court no choice but to deny that plaintiff its benefits."  *Milan*, 546 F.3d at 327.

In this case, the facts show neither a clear record of delay nor contumacious conduct sufficient to justify dismissal with prejudice.  Rosales filed this case on September 9, 2016 and his former counsel filed an agreed motion to withdraw and for continuance on December 1, 2017.  (Dkts. 1, 14, 15).  Although this case has been pending for approximately 19 months, Plaintiff's inactivity began approximately five months ago, and therefore does not present the "significant periods of total inactivity" that have been found to justify dismissal with prejudice. *See, e.g. Fraser v. O'connor*, No. 4:11-cv-03890, 2016 WL 4159753, at *3 (S.D. Tex. Aug. 4, 2016) (dismissing case with prejudice where plaintiff failed to meaningfully participate in case for almost two years); *cf Rogers v. Kroger*, 669 F.2d 317, 321 (5th Cir. 1982) (reversing district court dismissal of case for failure to prosecute when case had been on docket for total of two years and four months and had laid dormant for over a year during that time).  Similarly, the record lacks clear evidence of a pattern of contumacious conduct by Rosales or his attorney. Although Plaintiff's failure to respond to Chaparral's inquiry about his availability for deposition and subsequent failure to appear at a single noticed deposition was certainly negligent, it does not entail the stubborn resistance to authority that has been found to warrant dismissal with prejudice.  *See Abner v. City of Conroe Drug Task Force*, No. H-04-3380, 2005 WL 1162801, at *2 (S.D. Tex. Apr. 15, 2005) (dismissing plaintiffs' claims with prejudice for failure to prosecute where plaintiffs failed to (1) appear for deposition on three occasions, (2) respond to defendant's communications or discovery requests, (3) appear at hearing, and (4) pay court ordered sanctions); *Hale-Wells v. Wells Fargo Services*, No. H-04-4715, 2006 WL 903712, at *2 (S.D. Tex. Apr. 6, 2006) (dismissing plaintiff's claims with prejudice for failure to prosecute where plaintiff failed to appear for deposition on four occasions, despite notice).

Given the court's policy favoring disposition of cases on their merits, it is more appropriate that the court dispose of Plaintiff's case pursuant to Defendant's Rule 56 motion for summary judgment. *See Edwards v. Harris County Sheriff's Dept.*, 864 F.Supp. 633, 636 (S.D.Tex. 1994). For these reasons, it is recommended that Defendant's motion to dismiss for failure to prosecute be denied.

### 4.  Motion for Summary Judgment

#### 4.a.     Rule 56 Legal Standard

Summary judgment is appropriate if the record discloses "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (a).  Substantive law identifies which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact issue "is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations omitted).

"The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the nonmoving party will bear the burden of proof at trial, the summary judgment movant may satisfy its initial burden by pointing to an absence of evidence to support an element of the nonmoving party's case.  *See Celotex*, 477 U.S. at 325.  However, the moving party need not negate the elements of the nonmovant's case to prevail on summary judgment. *Boudreaux v. Swift Transp. Co*., 402 F.3d 536, 540 (5th Cir.2005)(citation omitted).

If the non-movant fails to respond to a Rule 56 motion, summary judgment is not granted simply by default.  *See Ford Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006); *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014).  Instead, summary judgment is appropriate only if the movant has met its initial burden to show the absence of a genuine issue of fact.  *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *Day*, 768 F.3d at 435. If the moving party meets its initial burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Rather, he is required to "go beyond the pleadings" and produce probative evidence to show "that there is a genuine issue for trial." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). When deciding the motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party, but is "not required to accept the nonmovant's conclusory allegations … and unsubstantiated assertions[.]" *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2008); *see Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).  "Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Teal v. City of Houston*, 523 F. Supp. 2d 555, 558 (S.D. Tex. 2007)(*citing Wallace v. Tex.Tech Univ.,* 80 F.3d 1042, 1048 (5th Cir. 1996).

**4.b.    Plaintiff has failed to raise a genuine fact issue on at least one element of his Title VII hostile work environment claim.**

Title VII of the Civil Rights Act of 1964 prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).  The phrase "terms, conditions, or privileges of employment" has been interpreted to include "requiring people to work in a discriminatorily hostile or abusive environment." *Deidol*

*v. Best Chevrolet, Inc*., 655 F.3d 435, 440 (5th Cir. 2011).  To survive summary judgment on a hostile work environment claim under Title VII, the nonmovant must demonstrate the existence of a genuine fact issue as to each element of his claim: (1) that he belongs to a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on his protected status; and (4) that the harassment affected a term, condition, or privilege of employment. *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 479 (5th Cir. 2008).

### 4.b.1.   Plaintiff has failed to create a genuine issue of fact or present any evidence that he is a member of the protected class he alleges was the basis for harassment.

Chaparral claims that Rosales has failed to raise a fact issue on element one because he has presented no evidence demonstrating he is Middle Eastern, the protected status upon which he bases his discrimination claim. [2] (Dkt. 18 at 16).  In his complaint, Plaintiff claims that he is of Middle Eastern descent because his "great grandfather was born in the Middle East[,]" but he has provided no evidence to support that allegation.  (Dkt. 18 at ¶ 7).  Allegations in a complaint are not summary judgment evidence and a party opposing a motion for summary judgment may prevail only if he provides *evidence* that raises a genuine issue of material fact for trial.  *Wallace*, 80 F.3d at 1047; *Johnston v. City of Houston, Tex*., 14 F.3d 1056, 1060 (5th Cir. 1994).  Because Rosales has provided no evidence to support his allegation that he is of Middle Eastern descent,

---

[2]  Plaintiff's complaint alleges that the harassment for which he seeks to recover "sought to equate Rosales to a Middle Eastern terrorist, [and] stemmed from Rosales' physical characteristics and membership in a protected class."  (Dkt. 1 at ¶ 32).  Rosales also claims he was harassed because he "has brown skin, a beard, and is of Middle Eastern and Hispanic descent."  (*Id*.).  Chaparral does not dispute that Rosales is Hispanic, but argues that the Rosales has presented no evidence tying the alleged harassment to Hispanic ancestry.  (Dkt. 18 at 17; Dkt. 18-4 at 8).  Indeed, the epithets about which Plaintiff complains are typically used in a derogatory manner toward individuals of Muslim faith or Middle Eastern descent. *See, e.g. E.E.O.C. v. WC&M Enterprises, Inc*., 496 F.3d 393 (5th Cir. 2007) (genuine issues of material fact existed on hostile work environment claim brought by a Muslim of Indian descent who was called "Taliban" and "Arab" following September 11, 2011 terrorist attacks).  Viewing the evidence in the light most favorable to Rosales, the court concludes that he has failed to allege facts and produce evidence that the harassment alleged was based on his protected status of Hispanic.

he has not met his summary judgment obligation to put forward and cite particular materials in the record to substantiate his claims. *Chhim v. City of Houston*, No. H-11-1560, 2012 WL 6020296, at *3 (S.D. Tex. Dec. 3, 2012) (granting motion for summary judgment on plaintiff's Title VII discrimination claim where plaintiff failed to provide evidence to support allegations of Cambodian and Asian descent); *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 858-59 (S.D. Tex. 2010) (holding that an employee seeking recovery on hostile work environment claim must show membership in a protected class and that harassment was based on membership in that class); *see Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004) (to survive motion for summary judgment, plaintiff must submit evidence showing there is a genuine issue of fact on each disputed element of his claim).

### 4.b.2. Plaintiff has failed to create a genuine issue of fact or present any evidence demonstrating that the harassment affected a term, condition, or privilege of his employment.

Because Title VII is not "a general civility code," the conduct alleged to have caused a hostile work environment must amount to more than rude or offensive comments. *Lauderdale v. Tex. Dep't of Criminal Justice,* 512 F.3d 157, 163 (5th Cir. 2007). To survive summary judgment, the plaintiff must raise a genuine issue of fact regarding harassment so severe or pervasive that it "destroys a protected class member's opportunity to succeed in the work place." *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 326 (5th Cir. 2004) (internal quotations omitted). To determine if the harassment is sufficiently severe or pervasive, the court must evaluate the totality of the circumstances. *Konnethu v. Harris Cty. Hosp. Dist*., 669 F. Supp. 2d 781, 791 (S.D. Tex. 2009). Among the factors considered are "the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, rather than merely offensive, and the degree to which the conduct unreasonably

interferes with an employee's work performance." *Id.* at 791 (citing *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 347 (5th Cir.2007).

Rosales has alleged that the verbal assaults "affected the terms, conditions, and privileges of [his] employment at Chaparral[,]" because he was "forced to be away from Chaparral's office where the offending employees preyed on him," and he was "frightened and emotionally distressed when he was in Chaparral's office." (Dkt. 1 at ¶ 33).   He claims he was "terrified of going to work" because of the daily verbal attacks, and "had trouble . . . gathering enough courage and energy" to attend work due to the daily toll that the abuse took on him.   (*Id.*).   He also alleges he was constantly "on edge, frightened, anguished and stressed about what hurtful verbal assaults might come next[,]" and suffered from "emotional distress, [a] negative mood, mental anguish, headaches, and troubles in his marriage" as a result of "[the] Chaparral[] [Supervisors'] regular verbal slurs.  (Dkt. 1 at ¶¶ 22, 33).   When considering Defendant's motion for summary judgment, the court examines whether Plaintiff has raised a genuine issue of fact regarding the impact of the harassment on his employment. Here, Plaintiff alleges the harassment impaired his ability to go to work and be in Chaparral's office, and caused him emotional distress, mental anguish, and headaches.

To meet its initial summary judgment burden, Defendant has presented evidence, specifically Rosales' text messages with his supervisor, which reveal that Rosales often missed work due to medical issues.  (Dkt. 18-1 at 4-42).   None of the evidence in the record identifies the hostile work environment or verbal harassment as the source of Rosales' medical issues or as interfering with his ability to attend work.  (*See, generally* Dkt. 18-1).   In fact, the evidence shows Plaintiff reported being late or unable to attend work because of physical therapy appointments (Dkt. 18-1 at 6, 7, 41), a surgery consultation to determine if "fragments" could be removed (Dkt. 18-1 at

9), repeated headaches and vision issues (Dkt. 18-1 at 4, 9, 10, 13, 21-25, 33), appointments with four different doctors after hitting his head the prior week, (Dkt. 18-1 at 23), an emergency with one of his dogs (Dkt. 18-1 at 13), and needing to go back home to retrieve his phone and wallet. (Dkt. 18-1 at 8).  In addition, the text messages contain an admission from Rosales that his "issues" pre-dated his employment with Chaparral, and that at least some of his absences were caused by appointments for medical issues related to the gunshot wounds he received in 2009. (Dkt. 18-1 at 9, 36).  The evidence put forward by Defendant is undisputed and provides support for its argument that Rosales' absences from work were caused by medical problems, not the alleged harassment.  *See UNUM Life Ins. Co. of America v. Long,* 227 F.Supp.2d 609, 614 (N.D. Tex. 2002) ("Although the court may not enter a 'default' summary judgment, it may accept evidence submitted by [movant] as undisputed.").

Rosales has failed to demonstrate a genuine issue of fact regarding the impact of the harassment on the terms or conditions of his employment.  The record simply lacks any evidence suggesting that Rosales' medical or health issues were caused by harassing conduct in the workplace. The only evidence in the record that supports any of Plaintiff's allegations is an affidavit from Ayala, which states that Ayala heard Chaparral employees call Rosales derogatory terms, that Ayala found those terms offensive, and that the derogatory terms were just one example of Chaparral employees using slurs toward people of different races and ethnicities. (Dkt. 1-2 at ¶¶ 3, 5, 6).  Although this affidavit supports Plaintiff's allegation that Chaparral employees used offensive slurs, it fails to provide any evidence with respect to whether the slurs interfered with Rosales' work performance or health, the frequency of the harassing conduct, or whether the conduct was physically threatening or humiliating.  Because the allegations in Plaintiff's complaint are not summary judgment evidence, they do not satisfy his burden to "go

beyond the pleadings…and designate specific facts showing there is a genuine issue of material fact []"regarding whether, under a totality of the circumstances, the harassment was sufficiently severe or pervasive. *Morgan*, 114 F.Supp.3d at 440 (quoting *Giles v. General Elec. Co.,* 245 F.3d 474, 493 (5th Cir.2001) and citing *Wallace*, 80 F.3d at 1047).

On this record, Rosales has not submitted any evidence to raise a fact issue on at least two elements of his claim—his membership in the protected class that is the basis of the alleged harassment; and the effect of the alleged harassment on the privileges, conditions, or terms of his employment. Therefore, Rosales has failed to demonstrate a *prima facie* case of a hostile work environment resulting from discrimination on the basis of race or national origin. *Kempthorne*, 684 F.Supp.2d at 876 (dismissing hostile work environment claim of plaintiff whose allegations were supported only by her subjective belief that comments were harassing and provided no evidence of required element that the harassing conduct altered her conditions of employment); *Konnethu*, 669 F. Supp. at 791 (dismissing hostile work environment claim where plaintiff who failed to respond to defendant's motion for summary judgment provided no evidence of "frequent, severe conduct that was physically threatening or humiliating or that interfered with his work performance[]"). For these reasons, it is recommended that Defendant's motion for summary judgment be granted.

### III. Conclusion and Recommendation

For the reasons discussed above, it is **RECOMMENDED** that the Defendant's motion to dismiss for failure to prosecute under Rule 41(b) be **DENIED,** and that its motion for summary judgment be **GRANTED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28

U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 8608.

Signed at Houston, Texas, on May 9th, 2018.

Christina A. Bryan
United States Magistrate Judge